[No. A043318. First Dist., Div. Four. July 17, 1989.]

P. V. PATEL et al., Plaintiffs and Appellants, v.
L. G. PATEL et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**8**

COUNSEL

Francis B. Mathews and Mathews & Mathews for Plaintiffs and Appellants.

John M. Dalton, Dalton, Nord & Bicknell and Michael J. Murray for Defendants and Respondents.

OPINION

CHANNELL, J.—Appellants P. V. and Kirit Patel sued for specific performance of a real estate contract and incidental damages from respondents and sellers L. G., S. L., and Rajeshkumar Patel. The sellers successfully defended the specific performance action at trial, although they were ordered to compensate P. V. and Kirit for all expenses incurred to execute the contract. P. V. and Kirit Patel appeal, contending that (1) as bona fide purchasers for value, they were entitled to specific performance and (2) the trial court should have awarded them damages, costs, and attorney fees. We affirm the judgment.

## I.  FACTS

Respondents L. G. and S. L. Patel, husband and wife, own and operate the City Center Motel in Eureka. Appellants P. V. and Kirit Patel, father and son, own and operate another motel in the same community. On April 16, 1986,[1] Rajeshkumar, the son of L. G. and S. L., formed a partnership with his parents and became owner of 35 percent of the City Center Motel. The partnership agreement required that Rajeshkumar approve any sale of the motel. Record title to the motel was not changed to reflect his interest.

On April 21, L. G. and S. L. listed their motel for sale with a real estate broker. On May 2, P. V. and Kirit Patel made an offer on the motel, which L. G. and S. L. accepted. Neither the broker nor the purchasers knew of the son's interest in the motel. When L. G. and S. L. notified Rajeshkumar of their plans, to their surprise, he refused to sell his 35 percent of the motel. On May 4, L. G. and S. L. notified P. V. and Kirit that they wished to withdraw their acceptance. They offered to pay $10,000 in damages and to give them a right of first refusal for five years.

Instead, on May 29, P. V. and Kirit filed an action for specific performance and incidental damages. L. G., S. L., and Rajeshkumar responded that

---

[1] All subsequent dates refer to the 1986 calendar year, unless otherwise indicated.

the contract could not lawfully be enforced. After trial, the court found that, but for Rajeshkumar's undisclosed partnership interest, P. V. and Kirit would be entitled to specific performance of the contract. However, the trial court found the sale, which would make it impossible to continue the partnership business, was barred unless all partners agreed to it. The trial court held the contract unenforceable and denied specific performance. It also denied damages for the alleged " 'run-down' " condition of the motel and for loss of profits. However, because L. G. and S. L. lured P. V. and Kirit into spending money to perfect the sale, the trial court ruled that P. V. and Kirit were entitled to be compensated for those expenses—down payments, real estate commission, escrow fees, title insurance fees, loan fees, and any other costs—restoring them to the position occupied before the unenforceable contract was executed. Although the respondents were held to be the prevailing parties, their failure to disclose the existence of the partnership before executing the agreement resulted in an order that each party pay its own costs and attorney fees.

## II. SPECIFIC PERFORMANCE

First, P. V. and Kirit contend that they met the prerequisites for specific performance. They contend that the trial court erred when it refused to grant specific performance because Rajeshkumar did not approve his parents' sale of the motel. P. V. and Kirit assert that the trial court should have concluded that the sellers were estopped by their conduct from asserting that anyone other than L. G. and S. L. Patel were sole owners of the motel.

Generally, every partner is an agent of the partnership for the purpose of its business, and the act of every partner to carry on the business of the partnership binds the partnership. (Corp. Code, § 15009, subd. (1).)[2] However, partners acting without the approval of the remaining partners may not do any act which would make it impossible to carry on the ordinary business of the partnership. (§ 15009, subd. (3)(c).) These provisions distinguish between acts of a partner which bind the partnership without the express authority of the remaining partners and acts binding on the partnership only after express authorization by all partners. A contract executed by less than all of the partners to sell partnership real estate binds the other partners if the partnership *is in the business of buying or selling real estate* and the property covered by the contract is *part* of the stock held for sale. (*Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 217-218 [32 Cal.Rptr. 415 [384 P.2d 7]; *Owens* v. *Palos Verdes Monaco* (1983) 142 Cal.App.3d 855, 865 [191 Cal.Rptr. 381].) Enforcement of the contract for sale of the motel, executed

---

[2] All statutory references are to the Corporations Code, unless otherwise indicated.

by L. G. and S. L. without the approval of their partner Rajeshkumar, would result in the sale of *all* of the partnership assets, making it impossible for the partnership to continue, in violation of subdivision (3)(c) of section 15009.

Historically, partnerships were divided into two types: commercial or trading partnerships and noncommercial or nontrading partnerships. Although this distinction has been rejected in California, it remains a valuable tool in considering whether L. G. and S. L. exceeded their statutory authority by entering into the real estate sale contract, thus making it impossible to carry on the ordinary business of the partnership. (See *Owens* v. *Palos Verdes Monaco, supra,* 142 Cal.App.3d at pp. 866-867.) In the case of a commercial or trading partnership in which the usual partnership business is to hold and sell real property, a contract such as that involved in this case—to sell the sole partnership asset—would be enforceable. (*Id.,* at p. 867.) By contrast, when—as in the present case—the usual partnership business is to run a business, rather than to hold it in anticipation of its eventual sale, the partnership is not bound by a contract selling that business without the approval of all partners. (*Ibid.*; see *Petrikis* v. *Hanges* (1952) 111 Cal.App.2d 734, 738-739 [245 P.2d 39].) Under these circumstances, the trial court properly denied specific performance of the unauthorized contract in order to prevent destruction of the partnership, in compliance with subdivision (3)(c) of section 15009.

■ Nevertheless, P. V. and Kirit contend that the trial court should have applied subdivision (3) of section 15010 instead of subdivision (3)(c) of section 15009. Subdivision (3) of section 15010 states: "Where title to real property is in the name of one or more of the partners, whether or not the record discloses the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property unless the partner's act binds the partnership under the provisions of subdivision (1) of Section 15009, or unless the property has been conveyed to a bona fide purchaser for value without knowledge that the partner in executing the conveyance has exceeded his authority." P. V. and Kirit contend that they are bona fide purchasers for value because they had no knowledge of Rajeshkumar's unrecorded interest in the motel. They contend that this statute must be applied even though contrary to subdivision (3)(c) of section 15009.

The trial court found the provisions of section 15009, subdivision (3)(c) to prevail over those of subdivision (3) of section 15010. To enforce the contract of sale without Rajeshkumar's approval would frustrate the purpose of subdivision (3)(c) of section 15009 by making it impossible for the partnership to continue. (See § 15009, subd. (3)(c).) We have found no cases

with similar facts which discuss the conflict between these two provisions of the Uniform Partnership Act. (See § 15001.) However, as the purpose of the partnership is to operate a motel, rather than to hold it for eventual sale, we believe that the better result would be to preserve the partnership and hold the contract unenforceable.

■ P. V. and Kirit also argue that they are entitled to partial specific performance of the contract: that 65 percent of the motel ownership, representing the interests of L. G. and S. L., should go to them, at a 35 percent reduction in the purchase price to account for Rajeshkumar's interest. This issue was not raised at trial. P. V. and Kirit may not raise it for the first time on appeal. (See *Parker* v. *City of Fountain Valley* (1981) 127 Cal.App.3d 99, 117 [179 Cal.Rptr. 351].)

### III. DAMAGES AND ATTORNEY FEES*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.

---

* See footnote, *ante,* page 6.