[No. B137677. Second Dist., Div. One. Feb. 27, 2001.]

SCOTT M. LOMES, Plaintiff and Appellant, v.
HARTFORD FINANCIAL SERVICES GROUP, INC., et al., Defendants
and Appellants.

COUNSEL

Davis & Company, William J. Davis and Min Chang for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, David B. Ezra and Adam L. Johnson for Defendants and Appellants.

OPINION

**ORTEGA, J.**—The trial court granted declaratory relief to the insured, finding that the insurer owed a duty to defend. In all other respects, the trial court entered judgment for the insurer. Both parties have appealed.

Reversing the trial court's ruling on the declaratory relief cause of action, we hold there was no duty to defend. We remand for the trial court to enter judgment for the insurer.

BACKGROUND

Scott M. Lomes and William Low were the sole shareholders of Newton Wholesale Co., Inc., a wholesale grocery business that developed a computer software program to track inventories and evaluate food prices. When their business relationship soured, Low wrested control of Newton and ousted Lomes both as an employee and as president, although Lomes remained a director and minority shareholder. Lomes sued Newton Wholesale and Low in federal court, and Hartford Insurance Company of the Midwest provided a defense to Low and Newton in that action. However, Hartford refused to defend Lomes against the federal counterclaim filed by Low and Newton. Lomes then sued Hartford in state court over its failure to provide him a defense in the federal action.

*The Federal Action*

In his 1996 federal complaint against Newton Wholesale and Low (*Lomes v. Newton Wholesale Co. Inc.* (C.D.Cal., 1996, No. CV-96-01483DDP (VAPx)), Lomes alleged copyright infringement involving the software program he and Low had developed together (Lomes had registered a copyright for the program after being fired), unfair competition, and federal and state securities fraud.

Newton Wholesale and Low filed a federal counterclaim against Lomes, as "an individual," alleging defamation, conversion, intentional interference

with existing and prospective economic relations, breach of fiduciary duty, and misappropriation of trade secrets. It alleged, among other things, that after leaving Newton, Lomes telephoned a lender, and made false and defamatory statements that caused Newton to lose its financing. Nine months after the counterclaim was served, Lomes tendered his request for defense costs and indemnity to Hartford, claiming he had been sued for damages resulting from his activities as Newton's director. Hartford paid Lomes $10,000 to temporarily fund his defense under a reservation of rights. Hartford refused to provide more on grounds that most of the counterclaims did not seek damages for injuries covered by the policy, and Lomes was excluded from the one that did, namely defamation (as a form of personal injury), because he was no longer employed by the company or carrying out his duties as a director when he allegedly slandered Newton Wholesale and Low.

Meanwhile, the federal district court granted partial summary judgment in favor of Newton Wholesale on a claim by Lomes that he was entitled to reimbursement for attorney fees, finding that while "[i]ndeed, Newton's Articles of Incorporation provide[] for reimbursement of officers and directors sued in their capacity as such[,] Lomes . . . is not being sued in his capacity as an officer or director—Lomes is the plaintiff, and his role as a counterclaim defendant is unrelated to his officer/director status."

On August 15, 1997, the federal court granted another partial summary judgment in favor of Newton Wholesale and Low, and dismissed all remaining claims and counterclaims. Lomes appealed; the Ninth Circuit affirmed (*Lomes v. Newton Wholesale Co. Inc.* (Feb. 14, 2000, Nos. 97-56566, 98-56782) 2000 WL 158496). The counterclaim was not refiled in state court.

*The State Action*

Lomes sued Hartford in state court for breach of contract, bad faith, and declaratory relief regarding the duty to defend and indemnify. (*Lomes v. Hartford Ins. Co. of the Midwest* (Super. Ct. L.A. County, 1997, No. BC180247).[1] Hartford demurred, contending Lomes was not acting as an officer or director when the alleged wrongful acts occurred. The trial court overruled Hartford's demurrer, finding a possibility for coverage for acts allegedly committed by Lomes in his capacity as director. We summarily denied Hartford's petition for review of that ruling (May 14, 1998, B121101), and the California Supreme Court declined review (July 15, 1998, S070572).

---

[1]In a second amended complaint filed March 30, 1999, Lomes added The Hartford Financial Services Group, Inc., Hartford Insurance Company of the Midwest's parent company, as a defendant.

Lomes moved for summary adjudication of the cause of action for declaratory relief that Hartford had a duty to defend and indemnify him in the federal counterclaim action.

The trial court granted the motion, finding that Newton's insurance policy covered defamation, that Lomes was acting as a Newton director when he talked to bankers and allegedly slandered Low and that, therefore, Hartford had a duty to defend. We summarily denied Hartford's petition for a writ (May 19, 1999, B131139) and the California Supreme Court declined review (June 2, 1999, S079344).

Hartford then filed a motion for summary adjudication on the issue of damages, which the court granted, stating: "Defendant [Hartford] previously tendered a check for $10,000.00 to cover defense costs in the cross-complaint. In this motion Defendant has established and Plaintiff has not been able to counter the evidence that shows that Plaintiff's defense costs are less than $10,000.00, to wit about $7,700.00. That being the case, Plaintiff has not established he suffered any damages from Defendant[']s breach of the contract." The court entered judgment for Hartford on all remaining claims, in effect ending the case.

## THE CURRENT APPEAL

Lomes appealed from the portion of the judgment granting summary adjudication to Hartford regarding contract damages. Hartford filed a cross-appeal from the portion of the judgment granting summary adjudication to Lomes regarding the duty to defend.

## DISCUSSION

■ "A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo. [Citations.]" (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].) Specifically, the appellate court independently reviews an order granting summary adjudication of the duty to defend and the resulting judgment. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590 [79 Cal.Rptr.2d 134] ["The interpretation of an insurance policy as applied to undisputed facts . . . is a question of law for the [appellate] court, which is not bound by the trial court's construction."].)

■■■■ *Hartford's Cross-appeal—Duty to Defend*[2]

■ An insurer's duty to defend is broader than the duty to indemnify. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) However, an insurer has a duty to defend only if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insurance policy. (*Montrose Chemical Corp.*, at p. 295; *Horance Mann Ins. Co.*, at p. 1081.) If there is no potential for coverage, there is no duty to defend. (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 40 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

Whether an insurance policy provides that potential for coverage and, thus, a duty to defend exists, is a question of law for the court to decide. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) That determination usually is made by comparing the allegations of the complaint with the terms of the policy. (*Zelda, Inc. v. Northland Ins. Co.* (1997) 56 Cal.App.4th 1252, 1259 [66 Cal.Rptr.2d 356]).

■ Here, the commercial general liability (CGL) policy issued by Hartford to Newton Wholesale provided coverage for "bodily injury and property damage," defined as physical injury to a person or physical injury to tangible property, and for "personal and advertising injury," including defamation.

The only counterclaim arguably covered by the policy was Lomes's alleged defamation of Newton Wholesale and Low. Long after he left Newton, Lomes is said to have telephoned a lender, GP Factors, in April 1996 to suggest that Newton Wholesale was unstable and not credit-worthy, that Low was dishonest, and that he (Lomes) would be taking over the company.

The section of the policy defining "who is an insured" states in pertinent part: "If you are designated in the Declarations as: [¶] . . . [¶] c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, *but only with respect to their duties as your officers or directors.* Your stockholders are also insureds, *but only with respect to their liability as stockholders.*" (Italics added.) The named insured was Newton Wholesale Co., Inc., identified as a corporation.

---

[2]Lomes contends that the issue of Hartford's duty to defend has already been decided on the merits by writ review. It has not. Hartford's prior writ petitions were summarily denied without oral argument and without written opinions. Summary denial of a writ petition without a written opinion is not law of the case or res judicata. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894-896 [12 Cal.Rptr.2d 728, 838 P.2d 250]; *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 640 [88 Cal.Rptr.2d 197].)

Lomes was sued as an individual, not as a director. And, while it was undisputed that Lomes was still a director at the time of his alleged acts, he would also have had to be fulfilling his duties as an officer or director of Newton Wholesale to qualify for coverage. Lomes offered no evidence in support of his motion for summary adjudication that his actions were taken as a director on behalf of Newton; instead, he asserts on appeal that "it is certainly within the realm of 'possibility' that [he] made these statements in the course of advertising or soliciting lending activity for Newton as one of its directors." However, he cannot reasonably be said to have been acting in his capacity as a Newton Wholesale director when he allegedly defamed the corporation and his former partner. Such statements could hardly be considered helpful in attracting lenders to Newton. Lomes had already been fired and was working elsewhere, and Lomes testified at his deposition that he could not recall performing *any* services on behalf of Newton Wholesale after August of 1995.[3]

General liability insurance is intended to protect an insured corporation (and its officers and directors) against corporate liability to third parties, not to provide coverage for suits between directors or officers. (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1537-1538 [274 Cal.Rptr. 632]; *Olson v. Federal Ins. Co.* (1990) 219 Cal.App.3d 252, 264 [268 Cal.Rptr. 90].) As Hartford's attorney told the court, "I do think that there is . . . a serious problem with using Newton Wholesale's own insurance policy to afford the defense for someone who sued Newton Wholesale and who allegedly has taken action against Newton Wholesale." The question of whether a director can claim status as an insured under a corporation's policy after initiating litigation against that corporation raises important issues of public policy not directly addressed by the California courts in a published opinion.[4]

In *Milazo,* the California case most analogous to the situation before us, Division Three of this court reversed a trial court's summary judgment for defense costs and indemnity granted to a meat market's limited partner, Milazo, finding that the CGL policy issued by Gulf Insurance covered Milazo's liability as a partner, but not as an individual. His conduct in

---

[3]The federal court had earlier determined that Lomes was "not being sued in his capacity as an officer or director" in Newton Wholesale and Low's counterclaim. Hartford asserts collateral estoppel for the first time on appeal. Having independently reviewed the counterclaim and the insurance policy to arrive at our decision, however, we need not reach that issue.

[4]Lomes says in passing that Hartford should have defended him because it defended Low in a "mirror-image" lawsuit, involving "virtually identical claims." Lomes's complaint and Newton Wholesale and Low's counterclaim were not the same, the two men were not similarly situated, and Lomes offers no supporting argument. We thus need not address this issue.

destroying the market's ability to remain in business could not, as a matter of law, have been conducted in his capacity as a partner. (*Milazo v. Gulf Ins. Co., supra*, 224 Cal.App.3d at pp. 1538-1539.)

"To hold that a partner could be covered under a partnership general liability policy for his acts *against* the very business organization that gives him his status as an insured person would turn the concept of partnership coverage on its head. We therefore conclude that when a partner acts to misappropriate a partnership asset, interest or economic opportunity or to otherwise deprive the partnership thereof he cannot, as a matter of law, be deemed to be acting in his capacity as a partner." (*Milazo v. Gulf Ins. Co., supra*, 224 Cal.App.3d at p. 1539, italics in second sentence omitted.)

*Milazo* involved a partnership, not a corporation as here. While a partner may act independently within a partnership's usual course of business (Corp. Code, § 16301), the powers of a director of a corporation are more circumscribed. A corporation does not act through individual directors but, rather, through its board of directors. (Corp. Code, § 300; *Findley v. Garrett* (1952) 109 Cal.App.2d 166, 174 [240 P.2d 421].) An individual director has no authority to take action on behalf of the corporation without the consent of the board of directors. (See *Sammis v. Stafford* (1996) 48 Cal.App.4th 1935, 1941-1942 [56 Cal.Rptr.2d 589] [director's unilateral acts are not binding on corporation unless ratified by the board].)

In this case, Lomes does not contend Newton's board had authorized him to contact the lender and make statements harmful to Newton's loan application. As there are no facts to support Lomes's claim that he was acting in his capacity as a director, we conclude, as a matter of law, he was sued purely in his individual capacity.

Courts in other jurisdictions have applied the *Milazo* court's reasoning to factually similar situations, that is, to cases in which the alleged misconduct did not involve corporate liability for injury to a third party but was rather an internal dispute. (See, e.g., *Winther v. Valley Ins. Co.* (1996) 140 Or.App. 459, 461-463 [915 P.2d 1050, 1052-1053] [no duty to defend partner's alleged slander of copartner and conversion because not in " 'conduct of your business' "]; *Farr v. Farm Bureau Ins. Co. of Nebraska* (8th Cir. 1995) 61 F.3d 677, 681 [no duty to defend officer or director acting in manner "antagonistic" toward corporation's business interests]; *First Mercury v. New Orleans Private Patrol* (La.Ct.App. 1992) 600 So.2d 898, 901 [no liability coverage for officer, director, or shareholder not acting within scope of duties related to the business].)

Further, Lomes's contention that he should have been covered because breach of fiduciary duty was alleged did not render him an "insured" under

Newton Wholesale's policy. As the court explained in *Milazo*, "the fact of Milazo's status as a partner, while sufficient to create the fiduciary relationship which was breached by his wrongful acts, did not establish that such acts were committed in his capacity as a partner." (*Milazo v. Gulf Ins. Co, supra*, 224 Cal.App.3d at p. 1538.)

*Lomes's Appeal—Damages*

Given that Hartford had no duty to defend, Hartford was entitled to judgment, as a matter of law, on the entire action. Accordingly, we dismiss Lomes's appeal as moot.

## DISPOSITION

We reverse the order granting Lomes summary adjudication of the declaratory relief claim on Hartford's duty to defend and remand for the trial court to enter judgment for Hartford. We dismiss Lomes's appeal as moot. Hartford is awarded its costs on the appeal and cross-appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

The petition of appellant Scott M. Lomes for review by the Supreme Court was denied May 16, 2001.