Marc PRIMIANI; et al., Plaintiffs–Appellants;

v.

FEDERAL INSURANCE COMPANY, Defendant,

and

National Union Fire Insurance Company Of Pittsburgh, PA, Defendant–Appellee.

No. 04–56625.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2006.

Filed Nov. 3, 2006.

Randy M. Hess and Duane W. Shewaga, Adleson, Hess & Kelly, Campbell, CA, for Plaintiffs–Appellants.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Harrington Foxx Dubrow & Canter, LLP, Los Angeles, CA, for Defendant.

Mark G. Bonino, Esq. Mark G. Bonino, Esq., Michael J. Quinn, Ropers, Majeski, Kohn & Bentley, San Jose, CA, for Defendant–Appellee.

Before: D.W. NELSON, RAWLINSON, and BEA, Circuit Judges.

MEMORANDUM *

Appellants Marc Primiani, Jeffrey Coyle, Robert Wagman, Robert Francais, and Kenneth Anderson appeal the district court's order granting summary judgment for National Union Fire Insurance Company ("National"). Appellants filed claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief against National. Appellants contend that National, which insured Appellants' former employer myCFO, Inc. ("myCFO"), owed them a duty to defend against a third-party suit by Harris-myCFO, Inc. ("Harris").[1] The district court ruled that because "there was no potential coverage under [National's] policy," Appellants' claims failed as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand to the district court.

■ Appellants claim the district court erred by finding no duty to defend because there had existed a possibility that National would have had to pay on behalf of Appellants damages incurred in the Harris suit. We agree.

1. The Harris suit had settled before the district court's ruling in this case.

In California, a liability insurer's duty to defend its insured ... arises whenever a claim may potentially lead to indemnity. . . .

... Th[e] determination [whether the duty to defend is triggered] turns on all facts known by the insurer at the inception of the third party lawsuit. . . .

Any doubt as to whether these facts trigger a duty to defend is resolved in favor of the insured. . . .

... Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue [that] could bring it within the policy coverage.

*Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir.2002) (internal citation and quotation marks omitted) (third alteration in original).

National's policy with myCFO covered liability arising from "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The policy covered "[a]ny of [myCFO's] partners, executive officers, directors, stockholders or employees but only while acting within their duties."

Harris' Third Amended Complaint alleged Appellants "used their position with myCFO, and their corresponding superior knowledge of the Harris-myCFO Transaction, to utter false statements to Harris' clients ... such as Harris 'had no money' to sustain its business. . . ." The complaint further alleged Appellants' false statements resulted in "special damages: injury to [Harris'] business and business prospects, ... loss of clients and potential clients, ... among other injuries." Thus, the allegations of said complaint invoke coverage for myCFO under the specified peril of disparagement coverage.

■ But were Appellants "acting within their [myCFO] duties" so as to provide for individual, rather than corporate, coverage?

Appellants made known to National that their allegedly false statements occurred while Appellants were following myCFO management's orders to obtain client consent forms. Appellants wrote to National, "[T]he slander claim ... appears to be based on alleged statements made for the purpose of ensuring an appropriate continuation of services for clients of myCFO, Inc. in the face of its economic difficulties. Plainly, it was within the duty of [Appellants] to myCFO, Inc .... to ensure proper management of the accounts of myCFO, Inc. clients and, further, to protect myCFO, Inc. from claims that the accounts of such clients had been mismanaged."

Here, Appellants had a statutory duty to follow myCFO management's instructions to obtain consent forms from myCFO clients so that Harris could manage the clients' accounts after Harris purchased myCFO's assets. Cal. Labor Code § 2856; *see also* Cal. Civil Code § 2322. At the same time, Appellants-as trusted financial advisers of myCFO's clients-owed a fiduciary duty towards the clients to disclose information material as to whether clients should consent, *see Stokes v. Henson*, 217 Cal.App.3d 187, 194–96, 265 Cal.Rptr. 836 (1990), even if such disclosure were adverse to myCFO's interests, *see Duffy v. Cavalier*, 215 Cal.App.3d 1517, 1534, 264 Cal.Rptr. 740 (1989) (stating that an agent must "act in the highest good faith toward the customer" (citing Cal. Civil Code § 2322)). To fulfill both these duties under the circumstances, Appellants had to obtain the consent forms. In doing so, Appellants were authorized to answer clients' foreseeable questions regarding Harris' ability to manage clients' accounts.

Cal. Civil Code § 2319. Moreover, Appellants had to answer candidly clients' questions regarding Harris because such information would help clients make investment decisions and, in turn, insulate myCFO from clients' claims that Appellants breached their fiduciary duties by failing to disclose material information. *See id.* § 2322. It is possible that, in attempting to fulfill such duties, Appellants recklessly disregarded the falsity of disparaging statements they made to clients regarding Harris' ability to manage accounts.[2] Such theory of recovery would have been covered by National's policy and thereby triggered the insurer's duty to defend.

Because Harris' suit could have led to liability based on disparaging acts done within Appellants' duties as myCFO agents, potential coverage existed and triggered National's duty to defend.

National's contention that it would not be liable to Appellants because they have not exhausted their underlying insurance is without merit. National's policy with myCFO was a "drop-down" umbrella policy which covered damages in excess of myCFO's other insurance policies' limits as well as "[d]amages for [injuries] covered by [National's] policy but not covered by any underlying insurance . . . providing coverage to the Insured." Whereas National's policy explicitly covered both defamatory and disparaging acts, Federal Insurance Company's underlying policy with myCFO covered defamatory acts but not disparaging acts. *See Leonardini v. Shell Oil Co.,* 216 Cal.App.3d 547, 573, 264 Cal. Rptr. 883 (1989) ("[Disparagement] must be distinguished from the defamatory torts of libel and slander."). As stated above,

Appellants could have been liable to Harris for disparaging acts.

The district court's order granting summary judgment for National is reversed and we remand for proceedings consistent with this disposition.

REVERSED and REMANDED.

RAWLINSON, Circuit Judge, dissenting.

I respectfully dissent. In my view, the allegations of the Third Amended Complaint (Complaint) were stretched almost beyond recognition by the majority to preserve the semblance of a covered claim.

I agree with the majority that the Complaint is the appropriate starting point for determining an insurer's duty to defend. *See Pension Trust Fund v. Fed. Ins. Co.,* 307 F.3d 944, 949 (9th Cir.2002). However, I disagree that the allegations of the Complaint in this case trigger that duty.

The Plaintiffs in this case seek insurance coverage for the tort of disparagement. The pivotal inquiry in resolving the coverage issue is whether the Plaintiffs were acting within the scope of their duties as employees of myCFO when the disparaging statements were made. I part company with the majority because I do not read the Complaint as supporting the conclusion that the Plaintiffs were acting within the scope of their duties as employees of myCFO. Rather, I read the allegations of the Complaint as asserting loudly and clearly that Plaintiffs were in no wise acting for the benefit of myCFO when they uttered the disparaging remarks.

In a nineteen-page Complaint, the majority relies on a mere eight lines to sup-

---

**2.** An individual is liable for the common law tort of disparagement in California when he "publishes a false statement [disparaging another's property rights in land, chattels or intangible things] in reckless disregard of [the statement's] truth or falsity" and such injuri-

ous falsehood results in pecuniary harm to the other. (*Howard v. Schaniel,* 113 Cal. App.3d 256, 263 n. 2, 169 Cal.Rptr. 678 (1980) (quoting Restatement (Second) of Torts §§ 623A & 624)).

port its conclusion that the Plaintiffs were acting for the benefit of myCFO when they disparaged the successor company to myCFO.

In deciding whether a duty to defend exists, we must consider the Complaint in its entirety. *Buena Vista Mines, Inc. v. Indus. Indem. Co.*, 87 Cal.App.4th 482, 488, 104 Cal.Rptr.2d 557 (2001). Doing so compels the conclusion that the Plaintiffs were not acting for the benefit of myCFO. Rather, the Complaint asserts a systematic effort by the Plaintiffs to siphon myCFO's clients for the benefit of a competing company formed by the Plaintiffs. The allegations in the Complaint, including those linked to the disparagement claim, echo that theme, which is the antithesis of acting for the benefit of myCFO. *See Milazo v. Gulf Ins. Co.*, 224 Cal.App.3d 1528, 1539, 274 Cal.Rptr. 632 (1990) ("To hold that a partner could be covered under a partnership general liability policy for his acts *against* the very business organization that gives him his status as an insured person would turn the concept of partnership coverage on its head.... [W]hen a partner acts to misappropriate a partnership asset, interest or economic opportunity ... he cannot, as a matter of law, be deemed to be acting in his capacity as a *partner* ...."). (emphasis in the original);

*see also Lomes v. Hartford Fin. Srvs. Grp.*, 88 Cal.App.4th 127, 134, 105 Cal. Rptr.2d 471 (applying *Milazo* in a corporation setting).

We should not be lured into concluding otherwise by the Plaintiffs' newly-minted and farfetched argument that they were duty-bound to disparage myCFO to obtain client consent forms permitting myCFO to continue servicing the clients' accounts. What client would sign a consent form after being told that myCFO would be unable to continue to perform satisfactorily? If the Plaintiffs disparaged myCFO, one would be hard-pressed to say that it was for the benefit of myCFO. In relying on Plaintiffs' after-the-fact explanation, the majority opinion fails to focus on the allegations of the Complaint. *See Lomes* at 132, 105 Cal.Rptr.2d 471 (explaining that the court must "compar[e] the allegations of the complaint with the terms of the policy") (citation omitted); *see also Pension Trust Fund*, 307 F.3d at 949.

Because I conclude that the Plaintiffs were not acting for the benefit of myCFO when they disparaged myCFO, I would affirm the district court's ruling in favor of the insurers.