[No. B033502. Second Dist., Div. One. Mar. 29, 1990.]

C. DEAN OLSON, Plaintiff and Appellant, v.
FEDERAL INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Engstrom, Lipscomb & Lack and Jeffrey T. Bolson for Plaintiff and Appellant.

Hufstedler, Miller, Kaus & Beardsley and John Sobieski for Defendant and Respondent.

## OPINION

**HANSON, J.**—On June 16, 1986, plaintiff C. Dean Olson filed this bad faith suit against defendant insurer, Federal Insurance Company (hereinafter Federal), to recover attorney fees of approximately $300,000 plaintiff Olson had incurred in connection with four lawsuits while plaintiff was a director of Olson Farms, Inc. (Olson Farms). Defendant Federal had issued a policy providing claims protection for Olson Farms' board of directors, officers and for Olson Farms itself.

Defendant insurer had refused to pay plaintiff's attorney fees, asserting there was no coverage and that plaintiff had incurred the fees without obtaining Federal's consent, in violation of a provision in the policy requiring such consent. Prior to filing this suit, plaintiff obtained assignment from Olson Farms of any rights involved in the four lawsuits that the corporation had with respect to Federal's policy of insurance.

In addition to claiming that Federal had breached the insurance contract, plaintiff's complaint also alleged breach of the covenant of good faith and fair dealing and violation of Insurance Code section 790.03, and sought both compensatory and punitive damages.[1]

Defendant Federal answered the complaint denying liability, and after discovery, brought a motion for summary judgment. The trial court awarded defendant insurer summary judgment on all grounds stated in the moving papers. Plaintiff has filed a timely notice of appeal from the judgment. The parties agreed to proceed by joint appendix in lieu of a clerk's transcript, pursuant to rule 5.1, California Rules of Court.

### FACTUAL SUMMARY

Defendant Federal, respondent on this appeal, has not included a factual statement in its opening brief concerning this matter. We have adopted, in part, the discussion of facts set forth in plaintiff's opening brief and also referred to in the appellate record.

Plaintiff C. Dean Olson founded Olson Farms in 1938. With his brother H. Glenn Olson, plaintiff enjoyed success in business; in 1984, both Olsons owned substantial stock in numerous business entities, including Olson

---

[1] The record before us does not appear to contain a copy of plaintiff's complaint in this matter, although the complaint was one of the documents identified by the parties for inclusion in the appellate record.

Farms, Certified Egg Farms, Inc. (Certified Egg), Summers Ranch, Inc. (Summers Ranch), and certain "New York properties."

Plaintiff was a major shareholder in Olson Farms, was a member of the board of directors, but did not control the board. H. Glenn Olson was also a director. Certified Egg, owned by the Olson brothers, was not a subsidiary of Olson Farms but supplied eggs to Olson Farms and was managed by Olson Farms pursuant to contract. A dispute arose between plaintiff and his brother Glenn concerning the management, operation and ownership of Certified Egg, which caused H. Glenn Olson to file a lawsuit against C. Dean Olson on February 1, 1985, alleging breach of contract. This lawsuit was the first of four lawsuits for which plaintiff C. Dean Olson claimed coverage was provided by the Federal policy.

Prior to H. Glenn Olson's suit against plaintiff, Olson Farms, which had begun as an egg business, was experiencing some difficulty because that portion of the business had become unprofitable. Plaintiff C. Dean Olson was of the opinion that this situation was only temporary, but Olson Farms' board of directors was considering selling off certain subsidiaries of the corporation, action which plaintiff opposed. The board had also threatened to cancel Olson Farms' management contract with Certified Egg and divest the corporation of the egg business, unless the Olson brothers settled their dispute. The board's position on these matters was expressed at board meetings and in the corporate minutes.

The board was unable to persuade plaintiff Olson to settle with his brother, despite the lawsuit. The board began negotiations with Southwest Oil and Gas Company (Southwest), a subsidiary of Winn Industries (Winn), to take over Olson Farms. Plaintiff C. Dean Olson was determined to prevent a takeover by Winn and was determined to prevail over members of the board with whom he was in disagreement; he filed suit against Olson Farms seeking to prevent divestiture of the corporation's egg business in California and Arizona—this was lawsuit number two of the four lawsuits which formed the basis for plaintiff's suit against defendant Federal. Plaintiff also sought injunctive relief to prevent the takeover by Winn.

Plaintiff solicited enough proxies to remove the board of Olson Farms, and a new board was elected thereafter. When the old board refused to recognize the new board, plaintiff filed suit in the State of Delaware to compel recognition of the new board, and filed a backup suit in California with the same objective. The suit in California for injunctive relief, the solicitation of proxies and the Delaware lawsuit were the third and fourth

lawsuits for which plaintiff C. Dean Olson incurred attorney fees and for which he sought reimbursement by defendant Federal. (It is important to note that defendant Federal did provide coverage to the Olson Farms' board of directors when they were sued by fellow Director C. Dean Olson.)

All of these matters were ultimately settled by the parties involved, including the suit by H. Glenn Olson against C. Dean Olson. According to plaintiff, the board ultimately recognized that his actions were for the corporate good and agreed to assign C. Dean Olson the corporation's right to coverage pursuant to Federal's policy, to assist C. Dean Olson in obtaining indemnification for his activities during the multiparty corporate dispute.

Federal's policy (No. 8095-55-32, eff. Mar. 23, 1983, to Mar. 23, 1986), which insured the corporation and its directors and officers during these events, contained two insuring clauses, one for the directors and officers of Olson Farms and one for Olson Farms itself. The first insuring clause provided the following: "1.1 The Company shall pay on behalf of the Insured Persons ('Any person who has been, now is, or shall become a duly elected Director or a duly elected or appointed Officer of the Insured Organization') all Loss, for which such Insured Person is not indemnified by the Insured Organization, and which such Insured Person *becomes legally obligated to pay on account of any claim(s) made against him,* individually or otherwise, during or after the Policy Period for a Wrongful Act:

"(A) Committed, attempted or allegedly committed or attempted by such Insured Person(s) before or during the Policy Period; and

"(B) Reported to the Company, in accordance with Section 4, during the Policy Period or, if exercised, the Extended Reporting Period."

The basic coverage of the second insuring clause was similar, except that indemnification was provided to Olson Farms for losses for which it had provided indemnification to insured persons as permitted or required by law, which such insured persons had become legally obligated to pay on account of claims against them for wrongful acts.

The policy defined "Wrongful Act" as follows: "Wrongful Act means any error, misstatement or misleading statement, act or omission, or neglect or breach of duty committed or attempted by an Insured Person, individually or otherwise, *in the discharge of his duties to the Insured Organization in his Insured Capacity, or any matter claimed against him solely by reason of*

*his serving in such Insured Capacity.* All such causally connected errors, statements, acts, omissions, neglects or breaches of duty or other such matters committed or attempted by, allegedly committed or attempted by or claimed against one or more of the Insured Persons shall be deemed Interrelated Wrongful Acts." (Italics added.)

The policy defined "defense costs" as "that part of Loss consisting of costs, charges and expenses . . . incurred in the defense of legal actions, claims, or proceedings and appeals therefrom and the cost of appeal, attachment or similar bonds."

It also provided, in paragraph 6.1, that "No Defense Costs shall be incurred or settlements made without the Company's consent, which shall not be unreasonably withheld. The Company shall not be liable hereunder with respect to any settlements or Defense Costs to which it has not consented."

### STANDARD OF REVIEW

The parties are before us after the granting of summary judgment. Code of Civil Procedure section 437c provides in pertinent part: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. . . . The motion shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. . . . The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], the California Supreme Court explained that "[t]he summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.]

" 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed,

and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] '. . . [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citation.]' "

These principles guide both the trial and the appellate courts with respect to summary judgment. ■ On appeal, the appellate court conducts independent review of the trial court's disposition of a summary judgment motion, particularly when, as here, the disposition involves interpretation of language. With respect to the interpretation of writings, including policies of insurance, in the absence of the admission of extrinsic and conflicting evidence, this court exercises an independent function of review; since questions of law are involved, we are not bound by the trial court's interpretation of the policy in question. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 292-295, pp. 303-306.)

To the extent that the trial court is required to make mixed findings of law and fact, this court also exercises independent review. (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

## DISCUSSION

As indicated, the trial court awarded defendant insurer summary judgment primarily on the grounds there was no coverage provided by the language of Federal's policy for the activities of plaintiff C. Dean Olson undertaken in the dispute with his brother and with the other directors on the board of Olson Farms. We agree with the trial court that there was no coverage; we hold that this plaintiff's activities were outside the reasonable parameters of the policy issued. The nature of this dispute, between directors serving on the same corporate board and insured by the same insurer, also suggests the presence of conflict of interest issues which need not be addressed here, due to our initial and limited ruling.

We will discuss the lawsuits in sequence, and the contentions raised by plaintiff C. Dean Olson on this appeal as they refer to the particular lawsuit under discussion in relation to the language of the policy.

### I.  *H. Glenn Olson v. C. Dean Olson*

■ Defendant Federal contended in the trial court and contends here, that plaintiff C. Dean Olson was not sued by H. Glenn Olson for wrongful

acts committed, as set forth in the policy of insurance: "in the discharge of his duties to the Insured Organization in his Insured Capacity . . ." nor was the gravamen of the suit a claim against plaintiff "solely by reason of his serving in such Insured Capacity."

We view the argument as meritorious. Our record contains the complaint filed by H. Glenn Olson; his allegations were directed toward plaintiff's asserted interference with Certified Egg *as part owner* of Certified Egg, rather than acts undertaken as a director of Olson Farms. Plaintiff was not discharging duties owed to Olson Farms when engaged in what H. Glenn Olson perceived as actionable conduct concerning Certified Egg, nor was plaintiff sued *solely* because he was a director of Olson Farms; rather the dispute between the brothers was specifically directed toward their interests in Certified Egg, and H. Glenn Olson's allegations of wrongdoing by plaintiff concerned that corporation and that corporation alone.

Plaintiff C. Dean Olson argues that the suit by his brother, while on the surface directed toward the internal affairs of Certified Egg, was "pretextual" and, in reality, a challenge to C. Dean Olson's conduct as a director of Olson Farms. It is further argued that the issue of H. Glenn Olson's *real* motivation in bringing the suit was a triable issue of fact, and one which should have precluded summary judgment.

We disagree. The determination of whether the H. Glenn Olson claim was within the meaning of Federal's coverage clause must rest on an objective rather than subjective standard; a variety of inferences may be drawn concerning the motivation for any act, but rational interpretation of the coverage clause of this policy requires only the drawing of a reasonable inference based on the primary evidence, which in this case was the complaint filed against plaintiff C. Dean Olson. To hold otherwise would as a practical matter preclude use of summary judgment proceedings in insurance coverage disputes, and would increase the danger of collusion in matters such as this where the party's are closely related. In this case, the trial court relied, as do we, on H. Glenn Olson's *complaint* filed against plaintiff. In addition to the complaint, the record contained substantial documentation that the lawsuit stemmed from a lifelong family and business relationship between two brothers rather than as the result of either parties' status as a director of Olson Farms. We discern no triable issue of fact.

Further, the "wrongful acts" encompassed by the policy either referred to wrongdoing of a director of Olson Farms while *conducting Olson Farms' business* or a claim of wrongdoing made *solely* because of a director's status.

Neither of these types of "wrongful acts" were alleged in the H. Glenn Olson suit. For these reasons, defendant insurer was not obligated to indemnify plaintiff C. Dean Olson for any "wrongful acts" committed relative to his brother's suit.

## II.  *C. Dean Olson v. Olson Farms*

On April 1, 1985, plaintiff Olson filed a lawsuit against Olson Farms and members of the board of directors to prevent the named defendants from divesting the corporation of its egg operations. Among other things, plaintiff charged the named defendants with engaging in corporate conduct to put "pressure" on him to settle his dispute with H. Glenn Olson.

■  Defendant insurer argues on appeal that while plaintiff sought recovery of fees for this litigation in the trial court, no contention has been made by him on appeal that the trial court's ruling denying recovery of these fees was incorrect, and thus plaintiff should be deemed to have waived his claim for these fees. We decline to regard the issue as waived, in the absence of a clear indication of waiver; the plaintiff's opening brief does refer to "divestiture," although imprecisely.

■  The record before us shows, however, that contrary to plaintiff's assertion, the Olson Farms' board of directors did not accuse plaintiff of "wrongful acts" or make any claims or demands based upon the commission of such acts by plaintiff; the board understandably did desire that the Olson brothers settle their dispute because it was making the board's job of conducting the business of Olson Farms more difficult. This desire, expressed in the corporate minutes, was insufficient to constitute a claim against plaintiff C. Dean Olson. The board's decision to commence divestiture of the corporate egg operations, with which C. Dean Olson disagreed, did not constitute an accusation of wrongdoing by Olson either.

Defendant insurer's policy provided indemnification against loss that an insured ". . . *becomes legally obligated to pay on account of any claim(s)* . . . for a Wrongful Act." Not only has plaintiff failed to demonstrate the commission of any covered "wrongful acts" by plaintiff in connection with the "egg divestiture" aspect of this dispute, he has failed to show that any "claims" were made within the meaning of the policy's language against him by the named defendants in his lawsuit. It is uncontroverted that the term "claim" must be given its ordinary meaning in the context in which it is used. The ordinary meaning of "claim" in an insurance policy has been stated by the California Supreme Court. "Claim" means "an assertion of a legal right and includes within its meaning a money demand. . . ." (*Gribal-*

*do, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 447 [91 Cal.Rptr. 6, 476 P.2d 406].) In *Phoenix Ins. Co.* v. *Sukut Construction Co.* (1982) 136 Cal.App.3d 673, 677 [186 Cal.Rptr. 513], the definition of "claim" was expanded to include "a demand for something as a right, or as due." (See also *MGIC Indem. Corp.* v. *Home State Sav. Ass'n* (6th Cir. 1986) 797 F.2d 285, 288.)

We conclude that the trial court correctly determined that there was no coverage for the attorney fees incurred by plaintiff in the suit maintained against Olson Farms, its board of directors and others.

### III.   *C. Dean Olson v. Winn*

█ Plaintiff also sought recovery for attorney fees incurred in filing a suit on April 25, 1985, to enjoin the Olson Farms' board of directors from negotiating a takeover of Olson Farms by Winn. This suit was brought by plaintiff *as a shareholder,* rather than as a director of Olson Farms not in agreement with the majority of the board; defendant insurer's policy did not provide coverage for plaintiff as a shareholder. In addition, plaintiff was seeking to enjoin a course of conduct he had voted against as a director; it has been held that a director may not be held liable for corporate conduct under these circumstances. (*Francis T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 511 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].)

Plaintiff claimed below that he was acting as a response to the "claims and demands" of two other shareholders, Gaufin and Stratford, in prosecuting this action. The deposition testimony made clear, however, that while Gaufin and Stratford did strongly suggest to plaintiff that he file the shareholder suit and predicted that if he did not do so, he would at some point be in breach of his duties as a director, no charges of present "wrongful acts" were being made, nor were Gaufin and Stratford's expressions of opinion "claims." We conclude that defendant insurer was entitled to summary judgment on this issue.

### IV.

█ Finally, plaintiff contended below and here that the proxy solicitation and the Delaware lawsuit concerning the board of directors were necessary adjuncts to his efforts to prevent the Winn takeover. While these acts may well have served plaintiff's purposes effectively, i.e., to protect his interest as majority shareholder, plaintiff offers no specific argument to show why he should be indemnified for actions taken both in California and Delaware as a majority shareholder of Olson Farms rather than as a direc-

tor. Defendant's policy simply provided no coverage for majority or other shareholders; reasonable and fair interpretation of the policy is that it was intended to provide protection to Olson Farms' directors and officers from ordinary claims that might arise while discharging their duties to the corporation, not protection to a director-majority shareholder locked in a dispute with other members of the board under the circumstances presented here.

We conclude that the trial court correctly awarded summary judgment to defendant insurer. We do not find it necessary to interpret policy language providing that insureds under the policy obtain the consent of defendant insurer prior to making a claim for reimbursement of attorney fees. Since no issue was presented on this appeal by respondent concerning the taking of a frivolous appeal, we do not consider that issue either.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.