[No. B048292. Second Dist., Div. Five. May 21, 1991.]

JAMES H. McDANIEL, Plaintiff, Cross-defendant and Respondent, v. PATRICIA GILE, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Toledano & Wald, and James Toledano for Defendant, Cross-complainant and Appellant.

Revere, Rykoff & Wallace and Caroline Fowler for Plaintiff, Cross-defendant and Respondent.

**OPINION**

GRIGNON, J.—Defendant and cross-complainant Patricia Gile, who was represented in her marital dissolution action by plaintiff and cross-defendant attorney James H. McDaniel, appeals from a judgment entered after a court trial in favor of plaintiff on his complaint for legal fees and on her cross-complaint for legal malpractice and sexual harassment. Defendant contends that the order granting plaintiff's motion for summary adjudication of certain issues was improperly granted. We conclude that triable issues of fact exist as to: (1) whether an attorney's withholding of legal services to gain sexual favors from a client, as well as sexually harassing a client, constitute outrageous conduct for purposes of a cause of action for intentional infliction of emotional distress; and (2) whether an attorney's professional abandonment of a client and delay in providing services when the client refuses to give the attorney sexual favors is below the standard of care and skill of members of the profession for purposes of a cause of action for legal malpractice. Accordingly, we reverse the final judgment with directions to set aside the order granting summary adjudication.

## PROCEDURAL BACKGROUND

This action arises out of plaintiff's legal representation of defendant in her marital dissolution and his conduct toward her during the course of that representation. Plaintiff filed a complaint against defendant for payment of $2,362 in legal fees and costs incurred in defendant's dissolution proceeding.

Defendant filed a cross-complaint against plaintiff alleging: (1) breach of contract; (2) tortious breach of contract; (3) intentional infliction of emotional distress; (4) breach of the covenant of good faith and fair dealing; (5) legal malpractice; and (6) fraud. The causes of action, except for intentional infliction of emotional distress, essentially set forth a claim for legal malpractice based, in large part, on allegations of sexual harassment.

Plaintiff filed a motion for summary adjudication of issues asserting that, as a matter of law, the cause of action for intentional infliction of emotional distress: (1) was barred by the statute of limitations; (2) was not actionable because the alleged sexual advances did not constitute outrageous conduct; and (3) was barred by Civil Code section 43.5 which, in pertinent part, disallows a cause of action for seduction of a person over the age of legal consent. Plaintiff also argued that, as a matter of law, his alleged sexual advances toward defendant did not constitute a cause of action for malpractice. In support of his motion, plaintiff submitted to the court defendant's answers to plaintiff's interrogatories.

The lower court granted the motion for summary adjudication of issues, finding that: (1) defendant could not state a cause of action for intentional infliction of emotional distress or legal malpractice based upon plaintiff's alleged sexual advances; and (2) Civil Code section 43.5 barred plaintiff's action for intentional infliction of emotional distress. The lower court took off calendar the issue as to whether defendant's action for intentional infliction of emotional distress was barred by the statute of limitations.

At the onset of the bench trial, defendant, through her attorney, and plaintiff, representing himself, agreed that, "the issue of plaintiff's sexual advances had been eliminated from this litigation," and that all causes of action of the cross-complaint had been subsumed by the summary adjudication order except for malpractice as to the community interest in defendant's ex-husband's retirement plan. The court, however, then stated that, in spite

of the parties' understanding, it intended to proceed on both the legal malpractice[1] and fraud causes of action.

At trial, plaintiff was the only witness to testify and defendant presented no evidence on her cross-complaint. The court granted judgment for plaintiff on both the complaint and the cross-complaint. The trial court specifically found that: (1) defendant presented no evidence on her actions for breach of contract, tortious breach of contract, breach of the covenant of good faith and fair dealing, or fraud; (2) defendant's action for intentional infliction of emotional distress was disposed of on summary adjudication; and (3) defendant did not prevail on her action for malpractice. Defendant took nothing on her cross-complaint and plaintiff recovered $1,950, plus costs, on his complaint.

Defendant appeals from that judgment.

FACTS

*Summary Adjudication*

The facts are taken from defendant's answers to plaintiff's interrogatories, which were submitted by plaintiff in support of his motion for summary adjudication.[2] In January of 1985, plaintiff met with defendant and "fill[ed] out a lengthy and intimate self-characterization document, seeking intimate details of [her] personal and sexual life." At their next meeting plaintiff "continually referred to [*sic*] back to the more intimate parts of [her] personal life, particularly remarking about the sexual problems [she] had in [her] marriage."

Several weeks later, when plaintiff and defendant were at the courthouse, plaintiff took defendant into a small room and when she attempted to leave he grabbed her and "pinned [her] against the wall and kissed [her] on the mouth." Later that day, when plaintiff handed defendant some opposition papers which "frustrated and anger[ed]" her, plaintiff leaned over her and said, " 'I bet you are so frustrated right now, if I put you on top I bet you could last for hours.' "

On numerous occasions during the following weeks, plaintiff called defendant both at home and at her work place and made "sexually suggestive remarks." When defendant asked plaintiff if he always talked to his clients

---

[1]The legal malpractice claim included both the contractual and tort theories of recovery, but did not include the issue of plaintiff's sexual advances.

[2]In his answer to the cross-complaint, plaintiff denied the allegations of sexual advances toward and harassment of the defendant.

like that, he answered, "that he only did so with 'the sexy ones.' " Plaintiff would also call defendant at home in the late evening and ask her to come to his office.

After defendant refused to have sexual relations with plaintiff, plaintiff abandoned her and failed to "[r]epresent [her] interests, appear in court to represent [her] interests, negotiate a complete and fair property settlement . . . , properly advise [her] of [her] rights," return her phone calls, or take any action at all except after numerous requests. In January of 1986, defendant needed a restraining order because she was having a problem with her ex-husband involving the police. She called plaintiff at his office for days. When she finally spoke to him, he told her that "if [she] had played the game 'the right way' [she] would have the right phone number to reach him immediately. [She] understood this to mean that if [she] gave him sexual favors he would have been available for [her] as an attorney and not otherwise."

When defendant brought a friend to meetings to protect herself from plaintiff, he made sexually suggestive remarks about her and other women. One time he told defendant's friend that "when a woman client came to him, she was extremely vulnerable, so if she went to bed to get better service from him, 'so be it.' " Defendant had heard that plaintiff had done the same things to other women in her position and that his reputation for this was "well known around the Ontario courthouse."

Plaintiff advised defendant that she had no community property interest in her ex-husband's retirement of $18,000, and, as a consequence, she lost her one-half interest. Ultimately, she was forced to settle her case alone to her disadvantage.

Defendant has suffered emotionally from plaintiff's acts and failures to act. She is afraid of being alone with men. This affects her work as a salesperson because she is unable to make sales calls when she might be placed in the position of being alone with a man. She is on medication and began psychological counseling in March 1985. Her emotional condition has not changed since March of 1985, and she continues to receive psychological counseling.

*Trial*

Plaintiff is a family law attorney practicing in San Bernardino County. Defendant first came to see plaintiff on January 21, 1985. She filled out a new client memo and talked to plaintiff for 30 to 45 minutes. Subsequently, she completed an interview form. She retained plaintiff to represent her in a

dissolution proceeding. She agreed to pay a $1,000 retainer, a minimum of $1,850 plus costs, and an actual fee based on a $125 per hour rate.

Plaintiff represented defendant at a hearing to exclude her ex-husband from the family residence. Plaintiff appeared with defendant at a second hearing where she attended mediation. He attended court hearings, engaged in discovery, conducted research, and prepared pleadings. Defendant attempted to settle the divorce case with her ex-husband without the assistance of plaintiff. Plaintiff appeared in court to obtain a restraining order against defendant's ex-husband. He also appeared at a settlement conference with a settlement conference brief. Ultimately, the matter was settled. Plaintiff prepared the judgment. Plaintiff did not independently investigate the value of the ex-husband's retirement plan, but relied on the valuation obtained by the ex-husband's attorney.

At the conclusion of the dissolution proceedings, defendant owed plaintiff a sum for attorney's fees and costs which she did not pay.

## DISCUSSION

### Summary Adjudication of Issues

■ A review of an order granting summary adjudication of issues is bound by the rules applicable to review of summary judgments. (*Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268, 273 [161 Cal.Rptr. 789].) In reviewing a summary judgment we must determine if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant moving for summary judgment must conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." (*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 [176 Cal.Rptr. 68].) The moving party has the burden of showing that as a matter of law there were no triable issues of fact. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

In *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], the Supreme Court held that "[t]he summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] . . . [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.'

[Citation] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] ' . . . [I]ssue finding rather that issue determination is the pivot upon which the summary judgment law turns.' [Citation.]"

We conduct an independent review of the trial court's disposition. (*Olson v. Federal Ins. Co.* (1990) 219 Cal.App.3d 252, 260 [268 Cal.Rptr. 90].)

*Intentional Infliction of Emotional Distress*

Defendant contends that there are triable issues of fact as to her cause of action for intentional infliction of emotional distress. She further contends that the trial court erred in granting summary adjudication of issues based on plaintiff's assertions that: (1) the cause of action was barred by Civil Code section 43.5; and (2) his conduct was not "outrageous" as a matter of law. We agree.

■ To recover for intentional infliction of emotional distress a plaintiff must show: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58].) ■ Outrageous conduct is that which exceeds " '. . . all bounds usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress. [Citation.] Ordinarily mere insulting language, without more, does not constitute outrageous conduct. . . . Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.' " (*Ibid.*)

Moreover, " '[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. . . . [¶] The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.' " (*Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 297, fn. 2 [131 Cal.Rptr. 547], disapproved on

other grounds in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].)

 Plaintiff does not contend that there are no triable issues of fact as to the intentional nature of the conduct, the existence of emotional distress, or causation. His sole contention is that his conduct, as set forth in defendant's responses to interrogatories, is insufficient as a matter of law to constitute outrageous conduct. This contention is without merit.

 A fiduciary relationship exists between attorneys and clients. An attorney must act with the most conscientious fidelity. A breach of fiduciary duty by an attorney is actionable whether it involves financial claims or physical damage resulting from the violation. (*Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 383 [193 Cal.Rptr. 422].)

 Defendant had a special relationship with plaintiff in that she was a client and plaintiff was her attorney representing her in a dissolution of marriage proceeding. Plaintiff was in a position of actual or apparent power over defendant. Defendant was peculiarly susceptible to emotional distress because of her pending marital dissolution. Plaintiff was aware of defendant's circumstances. The withholding by a retained attorney of legal services when sexual favors are not granted by a client and engaging in sexual harassment of the client constitute acts of outrageous conduct under these circumstances. Neither *Barbara A.* v. *John G.*, *supra*, 145 Cal.App.3d 369 nor *Atienza* v. *Taub* (1987) 194 Cal.App.3d 388 [239 Cal.Rptr. 454], compels a different conclusion.

In *Barbara A.*, *supra*, 145 Cal.App.3d 369, the appellate court concluded that causes of action by a client for battery and deceit against an attorney *were* properly pled, where the client alleged that the attorney had misrepresented to her that he was sterile. Consensual sexual relations between the two resulted in an ectopic pregnancy causing the client severe physical and emotional injury. The court added that such behavior could be a violation of a fiduciary duty if the misrepresentation and reliance occurred as a result of the attorney-client relationship. The court specifically noted that it was not addressing the more general issue of whether consensual attorney-client sexual relations constituted a breach of ethics per se.

Similarly in *Atienza*, *supra*, 194 Cal.App.3d 388 the appellate court concluded that a cause of action for medical malpractice could not be stated where a physician engaged in consensual sexual relations with a patient when the sexual relations were not initiated by the physician in the guise of treatment of the patient. In other words, a patient cannot sue another

individual for seduction and call it medical malpractice simply because the individual happens to be her physician.

In this case, we are concerned with a claim for physical and emotional damages caused by defendant's alleged sexual harassment in the scope of the attorney-client relationship. *Barbara A.* permits such a claim and *Atienza* does not preclude it.

■ Plaintiff also contends that Civil Code section 43.5 bars the cause of action for intentional infliction of emotional distress. Civil Code section 43.5, subdivision (c), prohibits a cause of action for seduction. The word "seduction," as used in section 43.5, " '. . . imports the idea of illicit intercourse accomplished by the use of arts, persuasions, or wiles to overcome the resistance of a female who is not disposed of her own volition to step aside from the paths of virtue.' [Citation.] It is no longer possible for two consenting adults in the State of California to engage in 'illicit intercourse.' [Citation.]" (*Barbara A. v. John G., supra,* 145 Cal.App.3d at p. 377.) The outdated action for seduction protected a young, inexperienced woman from older men's sexual advances and required that she be chaste and virtuous at the time of the seduction. (*Ibid.*)

In *Barbara A., supra,* 145 Cal.App.3d 369, the court held that Civil Code section 43.5 was not applicable to the facts of that case since the client was not suing for seduction, i.e., sexual intercourse, but was suing for physical injuries resulting from the attorney's misrepresentation as to his sterility. The court analogized to cases permitting suits against sexual partners who failed to disclose that they were suffering from venereal disease. In *Atienza, supra,* 194 Cal.App.3d 388, the court held that since plaintiff had, in effect, pled a cause of action against her physician for seduction which was barred by Civil Code section 43.5, her action for intentional infliction of emotional distress as a result of that seduction was also barred by Civil Code section 43.5.

In the instant case, defendant makes no complaint that plaintiff violated her virtue or that she suffered humiliation and loss of reputation as a result of her seduction. Instead, defendant asserts that plaintiff threatened to withhold legal services unless she gave him sexual favors and subjected her to repeated sexual harassment. These assertions are completely different from an action for seduction which is precluded by Civil Code section 43.5.

■ Nevertheless, plaintiff predicts "a floodgate of litigation" which will require courts to determine standards as to what statements can be made by an individual to a member of the opposite sex. Plaintiff's sweeping prediction belies the facts of this case and ignores his fiduciary relationship and

coercive conduct toward a vulnerable woman. Indeed, the facts of this case are no different than those alleging sexual harassment in the workplace. (See *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373].) Furthermore, our Supreme Court has held that fear of unfounded or fraudulent claims is not a valid reason for disallowing a tort action predicated upon a meritorious claim. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 736 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

We conclude that the summary adjudication of defendant's claim for intentional infliction of emotional distress was improper.

*Legal Malpractice*

 Defendant requests a reversal of the order granting summary adjudication of issues pertaining to the legal malpractice cause of action because she contends that plaintiff's abandonment of her and his delay in rendering legal services, as a result of her refusal to accept his sexual advances, constitute a breach of his professional duty.

 General principles of tort liability apply to attorney malpractice. In order to be liable for legal malpractice, the attorney must owe a legal duty to the client, he must breach that duty by performing below the standard of care and skill of members of the profession, and that breach must be the proximate or legal cause of injury or damage to the client. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) To evaluate the quality of an attorney's services in a divorce action, we determine whether the attorney demonstrated the requisite degree of competence in handling the matter. "The general rule with respect to the liability of an attorney for failure to properly perform his duties to his client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. [Citations.]" (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].)

 The facts before this court show that plaintiff not only delayed rendering legal services, but also withheld them and gave substandard services when defendant did not grant him sexual favors. This conduct necessarily falls below the standard of care and skill of members of the legal profession. We specifically do not address whether sexual relations between an attorney and client constitute a per se violation of the fiduciary relationship. We conclude that the summary adjudication as to the legal malpractice cause of action was improperly granted.

*Final Judgment*

 A summary adjudication of issues establishes that those issues are without substantial controversy. At trial, the issues that have been summarily adjudicated are deemed established and the trial proceeds only as to the remaining issues. (Code Civ. Proc., § 437c.) It is reversible error, however, for the court to deprive a party of a crucial theory or exclude admissible evidence in an action that would have supported a jury verdict in his or her favor. (See *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575, 588 [86 Cal.Rptr. 465, 468 P.2d 825].)

While it may reasonably be argued that defendant has waived her right to proceed on her causes of action other than legal malpractice and intentional infliction of emotional distress, we conclude that the summary adjudication of issues resulted in a de facto determination of all the parties' rights, because no significant trial issue remained. The order was tantamount to a summary judgment because the allegations of unwarranted sexual advances were integral to defendant's affirmative defenses against the collection action and necessary to each action in her cross-complaint. In essence, the summary adjudication of issues precluded defendant from presenting a crucial theory in her case that would have supported a verdict in her favor and any evidence supporting that theory.[3] It was reversible error for the court to deprive defendant of her defenses to plaintiff's complaint and her claims on her cross-complaint when the supporting documents in the summary adjudication presented evidence that the theory was viable.

Therefore, in view of the parties' understanding, stated on the record in open court, as to what issues remained for trial after the summary adjudication, and because the allegations of sexual harassment are so integrally intertwined with the other causes of action, we conclude that the entire action must be retried in its entirety. The final judgment is accordingly reversed.[4]

## DISPOSITION

We reverse the final judgment, with directions to set aside the order granting summary adjudication, and remand for further proceedings

---

[3] While it is true that the order granting summary adjudication of issues provided that the evidence of sexual advances could not support a legal malpractice cause of action, it is clear from the record that both parties understood and agreed that the order precluded defendant from presenting evidence of sexual advances. The trial court acquiesced in this understanding.

[4] Since the trial court did not rule on plaintiff's request for summary adjudication on the statute of limitations issue, we do not reach this issue. This case does not involve a summary judgment but rather a summary adjudication of specific issues.

consistent with the views expressed in this opinion. Appellant is to receive her costs on appeal. Appellant's request for sanctions is denied.

Turner, P. J., and Boren, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 15, 1991.