Filed 05/23/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-00225

| | |
|---|---|
| Azwala Rodriguez,<br>    Plaintiff<br><br>    v.<br><br>Philadelphia Indemnity Ins. Co., Primmer Piper<br>Eggleston & Cramer PC, Gary Karnedy, and<br>Richard Windish,<br>    Defendants | DECISION ON MOTIONS |

## RULING ON DEFENDANTS' PARTIAL MOTIONS TO DISMISS

This case arises out of a wrongful death lawsuit filed against Ms. Rodriguez and other parties. Ms. Rodriguez was initially represented by a law firm but later was dropped as a client, and she was then sued in the same case by her co-defendants, who were represented by the law firm that initially represented her. Plaintiff Azwala Rodriguez, represented by John J. Boylan, III, Esq., filed this action against the individual lawyers and the law firm that initially represented her, asserting breaches of the former lawyers' professional and fiduciary duties, among other causes of action. Defendants Gary Karnedy and Primmer Piper Eggleston & Cramer PC ("Primmer Piper") are represented by Shapleigh Smith, Jr., Esq. and Defendant Richard Windish is represented by Andrew H. Maass, Esq.[1] Pursuant to Rule 12(b)(6) of the Vermont Rules of Civil Procedure, Defendants move to dismiss Plaintiff's claims for intentional infliction of emotional distress ("IIED") and punitive damages. For the reasons discussed below, Defendants' motions are DENIED.

### Summary of Factual Allegations in the Amended Complaint

For purposes of deciding the instant motions, the Court accepts the following facts alleged in the Amended Complaint as true. The Court makes no finding as to their accuracy.[2]

---

[1] Plaintiff also named Philadelphia Indemnity Insurance Company as a Defendant here, which has filed an Answer to the Complaint.

[2] *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor."). Plaintiff filed an Amended Complaint in response to the motions to dismiss. *See* V.R.C.P. 15(a). Defendants argue the Amended Complaint is futile. However, in light of the Court's contrary conclusions, and the lack of any

Azwala Rodriguez, Upper Valley Services, Inc., and other individuals were named as defendants in a wrongful death action in April 2021 ("Fleurrey Lawsuit"). Am. Compl. ¶ 9. All defendants other than Ms. Rodriguez were insured for liability by Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity"), and the insurance company retained Richard Windish, Esq. to represent its insureds. *Id*. ¶¶ 10-11. Even though she was not covered by its insurance, Philadelphia Indemnity offered to provide an attorney to represent Ms. Rodriguez as a courtesy. Ms. Rodriguez accepted the offer, and Gary Karnedy, Esq. of Primmer Piper Eggleston & Cramer PC ("Primmer Piper") was hired to represent her. *Id*. ¶¶ 15-17.

David Kertis was a Philadelphia Indemnity employee and the adjuster handling the defense of Ms. Rodriguez's co-defendants in the Fleurrey Lawsuit. Attorney Karnedy and Primmer Piper reported to Mr. Kertis regarding their representation of Ms. Rodriguez and their analysis of the claims against her. *Id*. ¶ 25. Ms. Rodriguez's interests were adverse to the interests of the other defendants in the Fleurrey Lawsuit. *Id*. ¶ 41. Attorney Karnedy informed Mr. Kertis that the claims asserted against Ms. Rodriguez were strong and would likely survive any dispositive motion. *Id*. ¶ 27. Ms. Rodriguez did not know that her lawyers were reporting to Mr. Kertis and providing him with their evaluation of the claims against her. *Id*. ¶¶ 33-34. Without her knowledge, Attorney Karnedy and Primmer Piper informed Mr. Kertis about Ms. Rodriguez's health, her background, her prior dealings with the decedent, and other information relevant to the case against her in the Fleurrey Lawsuit. *Id*. ¶ 38.

Attorney Windish, who was representing the other defendants in the Fleurrey Lawsuit, joined the Primmer Piper law firm while the case was ongoing. *Id*. ¶ 50. Attorney Karnedy and Primmer Piper arranged for another attorney who was not affiliated with Primmer Piper to take over the representation of Ms. Rodriguez so that Attorney Windish (along with Primmer Piper) could continue representing the other defendants. No one informed Ms. Rodriguez about the reason she was being handed off to another lawyer, or that Attorney Windish was joining Primmer Piper. *Id*. ¶¶ 54-59. After they were no longer representing her, Attorney Karnedy and Primmer Piper refused to provide Ms. Rodriguez with her files until they were ordered to do so by a court, even then refusing to turn over the complete file. *Id*. ¶¶ 73-74.

Shortly after Attorney Windish joined Primmer Piper and Ms. Rodriguez was represented by another attorney, Attorney Windish and Primmer Piper, on behalf of the other Fleurrey Lawsuit defendants, filed a cross-claim against Ms. Rodriguez. In their cross-claim, the defendants sought to recover money to be paid in settlement of the Fleurrey Lawsuit or in satisfaction of any judgment against the other defendants insured by Philadelphia Indemnity, including their attorney's fees and costs. *Id*. ¶¶ 67-68. In filing the cross-claim, Attorney Windish and Primmer Piper were attempting to shift responsibility for a settlement or judgment of potentially millions of dollars from the other Fleurrey Lawsuit defendants onto Ms. Rodriguez. Id. ¶ 70. Attorney Windish and Philadelphia Indemnity had the benefit of confidential information, legal analysis, and an evaluation of the strength of the claims against Ms. Rodriguez that Attorney Karnedy had previously provided to Mr. Kertis. *Id*. ¶ 71.

---

objection by Philadelphia Indemnity Insurance Co., the Court relies on the Amended Complaint as the operative document in this matter.

In addition to her claims for IIED and punitive damages, Ms. Rodriguez asserts claims for breach of professional and fiduciary duties, breach of contract, breach of the covenant of good faith and fair dealing, fraudulent concealment, and vicarious liability. Defendants motions seek dismissal only of the IIED and punitive damages claims.

Discussion

"The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). When considering a Rule 12(b)(6) motion, the court assumes the truth of the facts alleged, making all reasonable inferences in the plaintiff's favor. *Fleurrey v. Dep't of Aging and Indep. Living*, 2023 VT 11, ¶ 4, 217 Vt. 527. Thus, the court's "attention is directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.C.P. 8(a)." *Bethel v. Mount Anthony Union High Sch. Dist.*, 173 Vt. 633, 634, 795 A.2d 1215, 1217 (2002) (quotation omitted). Dismissal is proper only if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). "[C]ourts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme." *Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 447 (1985) (citations omitted).

I.    Intentional Infliction of Emotional Distress.

In support of her IIED claim, Plaintiff alleges that the conduct of Attorney Karnedy, Attorney Windish, and Primmer Piper was "outrageous and were done intentionally and with reckless disregard of their impact on [her], all to the damage of Plaintiff, and caused her to suffer extreme emotional distress." *Id*. ¶ 86. Defendants argue that Plaintiff is unable to prove her IIED claim because the conduct she complains Defendants engaged in was not outrageous or extreme enough and because Plaintiff can recover her damages through other recognized torts.[3] The Court disagrees.

To sustain a claim for IIED, Plaintiff must show that Defendants engaged in "'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress,'" and that the conduct resulted in "'the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395 (quoting *Sheltra v. Smith*, 136 Vt. 472, 476 (1978)). In other words, Plaintiff must show that "[D]efendants' conduct was 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable.'" *Id*. (quoting *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 83 (2002)); *accord Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶¶ 19-20, 198 Vt. 204. Defendants' conduct must be assessed objectively: the emotional distress must be "'so severe that no reasonable person could be expected to endure it.'" *Davis*, 2014 VT 134, ¶ 20 (quoting *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57 (1994)). The court is to determine

---

[3] Although the moving Defendants are represented by different attorneys, their arguments are essentially the same and, where appropriate, the Court will refer to them together as "Defendants."

3

as a matter of law "whether a jury could reasonably find that the conduct alleged satisfies all the elements of an IIED claim." *Fromson*, 2004 VT 29, ¶ 14 (citation omitted).

Defendants argue that the conduct Plaintiff describes cannot satisfy the IIED threshold as a matter of law. Defendants largely rely on cases in which plaintiffs asserted that their attorney was negligent in his or her representation, and the conduct culminating in the claim for malpractice formed the basis for the IIED claim. *See, e.g.*, *Williams v. Callaghan*, 938 F. Supp. 46, 51 n.5 (D.C. 1996) (finding attorney's failure to represent client adequately was outrageous, court granted defendant summary judgment based on lack of proof conduct was also egregious); *Langrock Sperry & Wool, LLP v. Felis*, No. 2015-174, 2015 WL 7628683, at *2-3 (Vt. Nov. 19, 2015) (unpub. mem.) (plaintiff asserted claim for malpractice and IIED, and summary judgment was granted to defendant on both claims); *cf. Vincent v. DeVries*, 2013 VT 34, ¶¶ 20-21, 193 Vt. 574 (discussion of legal malpractice cases where negligent infliction of emotional distress claims were also asserted but not allowed to proceed except in special circumstances). However, although Plaintiff here is suing her lawyers, her claims do not sound strictly in malpractice, but rather arise out of alleged intentional breaches of professional and fiduciary duties. Accordingly, the Court does not find the analysis of IIED claims in legal malpractice cases to be particularly instructive.

Instead, the Court considers cases in which a plaintiff's attorney or individual holding some degree of power over the plaintiff was sued, not for malpractice, but for other extreme and outrageous conduct that was found to satisfy the threshold for IIED. For example, in *McDaniel v. Gile*, 281 Cal. Rptr. 242, 245 (Cal. Ct. App. 1991), the plaintiff client sued her attorney for IIED based on his sexual advances towards her and his refusal to represent her when she rejected his advances. In describing "outrageous" conduct, the *McDaniel* court stated:

> Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

*McDaniel*, 281 Cal. Rptr. at 247 (quotation omitted). Continuing, the *McDaniel* court noted: "the extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his [or her] interests." *Id*. (quotation omitted). Setting aside the trial court's grant of summary judgment to the defendant, the court held:

> Defendant had a special relationship with plaintiff in that she was a client and plaintiff was her attorney representing her in a dissolution of marriage proceeding. Plaintiff was in a position of actual or apparent power over defendant. Defendant was peculiarly susceptible to emotional distress because of her pending marital dissolution. Plaintiff was aware of defendant's circumstances. The withholding by a retained attorney of legal services when sexual favors are not granted by a client and engaging in sexual harassment of the client are outrageous conduct under these circumstances.

4

*Id*. Further, as the Colorado Court of Appeals has observed, "conduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other, or the power to affect the other's interests." *Farmers Grp., Inc. v. Trimble*, 658 P.2d 1370, 1377 (Colo. App. 1982) (quotation omitted) (reversing grant of summary judgment to defendant); *see also Restatement (Second) of Torts* § 46 cmt. e ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his [or her] interests."). Indeed, the Illinois Supreme Court has recognized that when there has been an abuse of a position of power, the "outrageousness" hurdle is lowered. *See Spahn v. Int'l Quality & Productivity Ctr.*, 211 F.Supp.2d 1072, 1076 (N.D. Ill. 2002) (citing *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994)).

The Court has been unable to find a case in Vermont or another jurisdiction with facts reasonably comparable to those alleged here, nor have the parties cited any. However, based on the control Defendants asserted over Plaintiff's participation in the Fleurrey Lawsuit, their first-hand knowledge of her susceptibility to liability in that case, the trust she placed in Defendants' representation, and the betrayal she felt when her former attorneys not only refused to turn over her files without a court order, but then, armed with all the strengths and weaknesses of her case, filed a lawsuit against her on behalf of her former-co-defendants, the Court concludes that a reasonable jury could find the alleged conduct rises to a level of outrageousness sufficient to sustain an IIED claim. This conclusion is reinforced by the Supreme Court's admonishment against "dismissing novel claims because 'the legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Montague*, 2019 VT 16, ¶ 11 (quoting *Ass'n of Haystack Prop. Owners*, 145 Vt. at 447). Accordingly, Defendants' motion to dismiss must be denied on this ground.

Attorney Karnedy and Primmer Piper also contend the IIED claim should be dismissed because the conduct about which Plaintiff complains could support a claim for a traditional tort rather than IIED. *See* Motion at 4-5. In support, however, Karnedy and Primmer Piper rely on cases from other jurisdictions that are inapposite because they are at odds with Vermont law. *See, e.g.*, *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993) (although defendant's conduct "could be found to be extreme and outrageous," plaintiff's claim for IIED (which Kentucky calls "outrage") was not allowed where plaintiff could recover damages for emotional distress in action based on assault or battery); *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996) ("[W]here one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common law action."); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (noting that Texas treats IIED claims as "gap-filler" torts, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress" (citation omitted)).

Unlike the other jurisdictions upon which Defendants rely, Vermont law does not treat IIED claims as "gap-fillers," nor are IIED claims precluded on the basis that a plaintiff is able to recover damages for emotional distress through another cause of action. *See, e.g.*, *Choma v. Tucker*, No. 5:18-CV-118, 2021 WL 2134911, at *3 (D. Vt. May 26, 2021) (holding that defendant's conduct satisfied the elements of each of plaintiff's "three causes of action: assault, battery, and intentional infliction of emotional distress"). Moreover, the Vermont Rules of Civil Procedure permit Plaintiff to plead "alternative grounds for recovery, even if they are inconsistent." *GEICO v. Bernheim*, 2013 VT 77, ¶ 18, 195 Vt. 73 (citing V.R.C.P. 8(e)(2)). Plaintiff is not entitled to multiple recoveries for the same harm, but she is entitled to assert alternative theories of recovery, regardless of whether they are inconsistent or duplicative.[4]

Finally, Attorney Windish points out that he "never represented Plaintiff hence no fiduciary duty" exists. Reply at 1. According to the Amended Complaint, Attorney Windish represented the insurance company's insureds in the Fleurrey Lawsuit, which were Plaintiff's co-defendants in that case. When the cross-claim against was filed against Plaintiff, Attorney Windish was associated with Primmer Piper and had access to information that Attorney Karnedy and Primmer Piper provided to Mr. Kertis about the strengths and weaknesses of the case against her. Again, given that the claim is not one for legal malpractice, it is not dispositive that Attorney Windish never represented Plaintiff, if he is alleged to have participated in the conduct that forms the basis of the IIED claim, such as the jettisoning of her as a client and the decision to assert a cross-claim against her in the Fleurrey Lawsuit.[5]

In sum, the Court concludes that Defendants are not entitled to dismissal of Plaintiff's IIED claim pursuant to Rule 12(b)(6).

II.  Punitive Damages.

Plaintiff's claim for punitive damages asserts that Defendants' actions "were outrageous, were deliberate, and were done intentionally and maliciously, in reckless disregard of the

---

[4] Similarly, Attorney Karnedy and Primmer Piper rely on the *Restatement (Second) of Torts* § 47, which addresses the emotional distress caused by an actor's intent to invade some other legally protected interest. However, Defendants have pointed to no Vermont cases endorsing that section of the Restatement, nor does the Court find it relevant to the facts here, where Ms. Rodriguez does not allege Defendants were trying to interfere with another protected interest when they caused her to suffer extreme emotional distress.

[5] The Court is also not persuaded by Attorney Windish's argument that Plaintiff's assertion of "extreme emotional distress" is insufficient, without more, to establish her damages. Reply at 2. While Plaintiff must prove legal harm before she can recover, she need only assert that she suffered extreme emotional distress to survive a motion to dismiss. "[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is 'exceedingly low,'" *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (quotation omitted), and Plaintiff's allegations sufficiently place Defendants on notice of her claims. *See* V.R.C.P. 8(a) (plaintiff need only assert "short and plain statement" of claim for relief and "demand for judgment" for relief sought); *see also Montague*, 2019 VT 16, ¶ 10 ("motions to dismiss are disfavored and should be rarely granted" unless no facts or circumstances would entitle plaintiff to relief (quotations omitted)).

6

Plaintiff Rodriguez, and were aimed at securing financial gain for the Defendants, at the expense of the Plaintiff Rodriguez, all to the damage of Plaintiff." Am. Compl. ¶ 100. "The purpose of punitive damages is to punish conduct that is morally culpable to the degree of outrage frequently associated with crime." *Beaudoin v. Feldman*, 2018 VT 83, ¶ 18, 208 Vt. 169 (quotation omitted). To recover punitive damages, Plaintiff must prove (1) "wrongful conduct that is outrageously reprehensible," and (2) "malice, defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Id*. (quotation omitted)). As the Vermont Supreme Court has explained,

> [r]eprehensibility is to be determined by reference to whether: "the harm caused
> was physical as opposed to economic; the tortious conduct evinced an
> indifference to or a reckless disregard of the health or safety of others; the target
> of the conduct had financial vulnerability; the conduct involved repeated actions
> or was an isolated incident; and the harm was the result of intentional malice,
> trickery, or deceit, or mere accident."

*Shahi v. Madden*, 2008 VT 25, ¶ 26, 183 Vt. 320 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). "[A]ctual malice may be shown by conduct 'manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights.'" *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 56, 179 Vt. 167 (quoting *Brueckner v. Norwich Univ.*, 169 Vt. 118, 129 (1999)). However, "intentional, wrongful, and even illegal conduct will not justify punitive damages unless the evidence supports an inference of 'bad motive' evincing a sufficient 'degree of malice.'" *Id*. (quoting *Brueckner*, 169 Vt. at 132).

"Because the purpose of punitive damages is to punish conduct that is 'morally culpable' and 'truly reprehensible,' [the Vermont Supreme] Court has set a high bar for plaintiffs seeking such damages." *Id*. ¶ 55. They are available "only to punish and deter defendants who acted with actual malice." *Id*. Examples of cases where punitive damages were awarded include *DeYoung v. Ruggiero*, 2009 VT 9, ¶ 23, 185 Vt. 267, in which a lawyer stole a widow's money that was earmarked for her children following their father's suicide. The defendant in that case breached his fiduciary duty to a vulnerable client, and he admitted that his motive in withholding the money was to enrich himself and promote his own business, which the Court found demonstrated "a bad motive." *Id*. ¶ 29. An award of punitive damages does not require a determination that a defendant's motive was to harm the plaintiff; it is enough that the defendant seeks to enrich him or herself. *Id*. Further, the Court noted that "[i]n cases involving wrongdoing by a fiduciary such as a lawyer, courts have stressed that malice arises when the attorney intentionally makes false statements to a client to obtain some personal gain." *Id*. ¶ 28; *see, e.g.*, *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518-19 (Ariz. Ct. App. 1995) (punitive damages awarded where lawyer simultaneously represented clients with adverse interests, without disclosing conflict of interest, and sought to shift liability and expose client struggling to pay legal bills to "unjustifiable risks of personal liability" in favor of other financially sound client) (citing cases).

Punitive damages were also allowed in *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶¶ 11-15, 188 Vt. 245, which involved the breach of fiduciary duties by the plaintiff's employee,

7

who abused his position to steer business to himself and a newly formed company and away from his employer, the plaintiff. The Court held that the jury could have properly found that defendant's conduct, which included an effort to sabotage his former employer's relationship with long-standing clients and siphon off those clients for his own financial benefit, "demonstrated actual malice." *Id*. ¶ 36; *see also Shahi*, 2008 VT 25, ¶ 26 (punitive damages awarded in case involving "campaign of terror against plaintiffs motivated in part by sectarian and racial bias, which violated Vermont's criminal laws); *Villeneuve v. Beane*, 2007 VT 75, ¶¶ 7-8, 10, 182 Vt. 575 (tenants entitled to punitive damages where landlord engaged in wrongful eviction, harassment, trespass, and termination of electricity); *Pion v. Bean*, 2003 VT 79, ¶ 42, 176 Vt. 1 (punitive damages awarded where plaintiffs verbally harassed defendants on regular basis, intentionally trespassed on their land, moved boundary pins, and destroyed their personal property).

On the other hand, punitive damages were not allowed in *Monahan v. GMAC Mortgage Corp*. In that case, defendants failed to renew plaintiffs' flood insurance, as they were contractually required to do, and due to damage from flooding, plaintiffs were unable to collect rent on the property that they relied on to pay their mortgage. *Monahan*, 2005 VT 110, ¶ 44. One of the defendants initiated foreclosure proceedings despite knowing that this would hurt the plaintiffs' credit rating and ability to secure future loans. *Id*. Affirming the jury's award of compensatory damages, the Court reversed the award of punitive damages. The Court held that (1) punitive damages are not generally available in breach of contract actions, *id*. ¶ 53, and (2) "intentional, wrongful, and even illegal conduct will not justify punitive damages unless the evidence supports an inference of 'bad motive' evincing a sufficient 'degree of malice,'" *id*. ¶ 56 (quoting *Brueckner*, 169 Vt. at 132); *but see Villeneuve*, 2007 VT 75, ¶ 10 (noting exception to rule that breach of contract does not support award of punitive damages exists when "breach has the character of a wilful [sic] and wanton or fraudulent tort, or . . . breaching party acted with actual malice"). A similar result was reached in *Beaudoin*, which involved a commercial dispute between two businessmen. The evidence showed that defendant intentionally (and wrongfully) withheld money from plaintiff, but, according to the Court, "[n]ot every claim of bad faith, conversion, or breach of fiduciary duty warrants a punitive-damages award." 2018 VT 83, ¶ 19. Reversing the trial court's award of punitive damages, the Court found: "While [defendant's] conduct may have been wrongful, intentional, and even actionable – as evidenced by the conversion, unjust enrichment, and breach of fiduciary duty judgments against him – as a matter of law, it falls short of the type of egregious behavior this Court has found to support punitive damages in the past." *Id*. ¶ 21.

In this case, Plaintiff alleges she was not informed about the reason Attorney Karnedy and Primmer Piper shifted her representation to another attorney, and in fact, they lied to her about the reason. She also was not aware that they were informing Mr. Kertis about the strengths or weaknesses of her case in the Fleurrey Lawsuit throughout the time they were representing her. She also did not know that the reason Philadelphia Indemnity was interested in providing her with counsel was to protect its own interests and to limit the damage she might do to it and her other co-defendants if she had other representation. She asserts that when Attorney Windish joined Primmer Piper, the firm was more interested in representing Philadelphia Indemnity than continuing to represent her because of the fees the insurance company would bring in, not only in that case, but as an ongoing client. Finally, Plaintiff contends that Defendants used her

8

confidential information and legal analysis to file a cross-claim against her in an attempt to shift potentially millions of dollars in liability from their clients to her.

The Court is not persuaded by Defendants' argument that such allegations do not rise to the level of "reprehensible conduct" or evidence of malice required to state a claim for punitive damages. At this early stage of the case, given Plaintiff's financial vulnerability and Defendants' conduct evidencing ill will towards her and a desire to enrich themselves at the risk of causing harm and financial ruin to Plaintiff, the Court cannot conclude that there exist no facts or circumstances that would entitle Plaintiff to such relief. Accordingly, Defendants' motions to dismiss Plaintiff's claim for punitive damages are denied.

<u>Order</u>

For the foregoing reasons, Defendants' Motions to Dismiss Plaintiff's claims for IIED and punitive damages (Mots. #1, 2) are DENIED.

All Defendants shall file their Answers to the Amended Complaint with 14 days of the date of this Order.

Electronically signed on May 23, 2025 at 8:35 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

9